Janet Rudd et al., as Executrices and Trustees under the Will of George Rudd, Deceased, Respondents, v. Annie E. Cornell, Individually, and as Administratrix of Genevieve M. Rudd, Deceased, Appellant, and Janet Rudd et al., Respondents.

1. Will — Construction — Contingent Interest. Under a will providing that the testator's estate be held in trust during the life of the survivor of his two youngest children, and directing that the executrices, during the continuance of the trust, apply one-third of the income to the use of the testator's wife and the residue to the use of his children in equal shares, the share of a deceased child leaving issue to be paid to such issue, and further providing that upon the termination of the trust two-thirds of the trust estate, if his wife is living, and the whole if she is dead, shall be divided between his children then living and the issue of any deceased, such issue to take the share of its deceased parent — a granddaughter of the testator whose parent is dead, takes only a contingent or defeasible estate or interest in the income or principal of

the trust property which will not vest until the end of the trust period, or if vested, will be divested by her death during the continuance of the trust.

2. JUDGMENT — RES JUDICATA — TRUST.    A statement in an interlocutory judgment rendered in a partition suit, that a certain beneficiary under a testamentary trust is entitled to a specified portion of the proceeds of sale, is not binding upon the other beneficiaries where their rights as between themselves were not drawn in issue, and the final judgment merely determined that one-half of the proceeds of sale should be paid to the executrices under the will for the purposes of the trust created by it.

3. EVIDENCE — BURDEN OF PROOF — ESTOPPEL.    One who sets up a judgment as an estoppel has the burden of proof to show that the questions in issue in the pending suit were litigated and determined in the action in which the judgment was rendered.

4. JUDGMENT — CONSTRUCTION OF THE TERM "REMAINDER IN FEE."    A statement in the referee's report and in the interlocutory judgment rendered in a partition suit. that a designated beneficiary under a testamentary trust is entitled to "a remainder in fee" in a specified part of the premises sought to be partitioned, does not import a fee simple absolute or effect any change or enlargement of the beneficiary's interest or estate beyond that given by the will.

5. EFFECT OF JUDGMENT IN ACTION OF ACCOUNTING.    A judgment rendered in an action for an accounting whereby it was decreed that a designated beneficiary under a testamentary trust was entitled to a specified share of the accrued income in the hands of the trustees is not conclusive in a later action to determine the disposition of income accruing subsequently to the death of the beneficiary whose share is claimed under the terms of the will creating the trust by her next of kin and heir at law.

*Rudd* v. *Cornell,* 58 App. Div. 207, affirmed.

(Argued April 3, 1902; decided May 13, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 11, 1901, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

The action was brought for an accounting by the plaintiffs as trustees under the last will and testament of George Rudd, deceased. It also involved the construction of the third clause of the testator's will. The appellant, individually and as administratrix of the estate of Genevieve M. Rudd, deceased, appeared and answered, alleging that her intestate

was entitled to a portion of both the income and *corpus* of the estate of the plaintiffs' testator, and that upon her death the appellant, her mother, and only next of kin and heir at law, became entitled to the share of her deceased daughter. She also alleged that, by two previous judgments between the parties, the will of the testator was construed to the effect that Genevieve was entitled to a share in the income of the trust estate and had a remainder in fee in the trust property, and that such construction was *res adjudicata* and a bar to any different construction of the will.

George Rudd died in the city of New York September 14, 1884, leaving a last will and testament dated August 27, 1870, and a codicil executed August 28, 1880. He left him surviving his widow, Janet Rudd, and five children, Eliza M. Rudd, George Rudd, Jr., Mary F. Rudd, Marvin W. Rudd and Althea S. Rudd. By his will the testator provided for the payment of his debts and funeral expenses, gave his wife all his household furniture, printed books and plate, and then followed the third paragraph of his will: " *Third.* I do give, devise and bequeath to my executors hereinafter named, the survivors and survivor of them all the rest, residue and remainder of my estate real and personal wheresoever and whatsoever, in trust and for the purposes following; that they invest my personal property on bonds secured by mortgages on real estate, or stocks of a permanent character, and that they rent my real estate, and that during the lives of my two children Marvin W. Rudd, and Allie Rudd and the survivor of them that they apply one-third of the net rents and income of my said estate to the use of my said dear wife Janet for and during the term of her natural life, if she shall so long live, and that they apply the residue of said rents and income, and the whole thereof after the decease of my wife, to the use of my children, viz. Eliza Moore Rudd, George Rudd, Mary Frances Rudd, Marvin W. Rudd and Allie Rudd, in equal shares, and in case either of them shall die before the death of the survivor of my said two children Marvin and Allie leaving lawful issue surviving, then the share of the one so dying to

be paid over to such issue, if one solely, if more than one jointly and equally, but if the one so dying leave no lawful issue surviving then such share to be paid to the survivors; and upon the death of the survivor of my said two children Marvin and Allie then upon the further trust that my said executors or the survivor of them do divide my estate and pay one-third thereof to my wife, if she shall then be living and one share of the residue thereof (and of the whole if my said wife shall have deceased) to each one of my children who shall then be living, and to the issue of such of them who shall have died, leaving lawful issue him or her surviving such issue to take the share of the parent, if one solely, if more than one jointly and equally; provided that if in the judgment of my executors it shall be most to the interest of my estate that my unimproved real estate shall be sold before the division herein directed, or for the purposes of division, then I do authorize and empower my said executors to sell and convey the same to the purchasers or purchaser thereof, and until the said division that they invest the proceeds of sale and pay the income thereof as hereinbefore directed    And provided further that in case of any damage or destruction to any of my buildings by fire, and the amounts of the policies of insurance should not be sufficient to repair or rebuild the same, my executors are authorized and requested to repair or rebuild the same as the case may be, and to apply any monies from my estate necessary for the purpose.    The provisions herein made for my said wife are to be accepted by her in lieu and bar of dower and other claim on my estate.    And I do nominate and appoint my said dear wife the guardian of the persons and estates of my minor children during their minorities, and I authorize the share of the income of my said estate to which my minor children are entitled, shall be, during their minorities, paid to her, and that her receipt therefor shall be a discharge to my executors; and I do nominate and appoint my said wife Janet executrix, and my brother Joseph Rudd, and my brother-in-law, John T. Wait, executors of this my last will and testa-

ment." By his codicil he revoked the appointment of his brother and brother-in-law as such executors, and appointed his wife and daughters Eliza and Mary as executrices thereof.

The will was probated both as a will of real and personal property, and the executrices duly qualified as such. Marvin, one of the persons for the period of whose lives the trust was created, died in March, 1888, leaving his wife, the defendant Annie E. Cornell, and his daughter Genevieve his only next of kin and heir at law. Genevieve died in November, 1897, leaving the appellant her sole next of kin and heir at law. Eliza died in August, 1892; Mary in January, 1894, and neither left issue. The testator's widow, his son George and daughter Althea are still living. George had a wife and one child at the death of his father, and at the commencement of this action he had four other children, who now survive and are the four infant defendants herein. The trust created by the will has not yet terminated, the period for distribution being postponed until the death of Althea.

*David B. Hill* and *John E. Parsons* for appellant. Upon the death of the testator the estate vested in his children, subject to the execution of the trust; and upon the death of Marvin W. Rudd, one of the children, before the termination of the said trust, his share of the estate became vested, without limitation or restriction, in his surviving issue, to wit, Genevieve Rudd, and she having died, her share goes to her mother, Mrs. Cornell, as her sole heir and next of kin. (*Matter of Tompkins,* 154 N. Y. 634; *Campbell* v. *Stokes,* 142 N. Y. 23; *Connelly* v. *O'Brien,* 166 N. Y. 408; *Hersee* v. *Simpson,* 154 N. Y. 496; *Byrnes* v. *Stilwell,* 103 N. Y. 460; *Corse* v. *Chapman,* 153 N. Y. 467; *Jennings* v. *Barry,* 5 Dem. 531; *Patterson* v. *Ellis,* 11 Wend. 260; *Robert* v. *Corning,* 89 N. Y. 241; *Van Brunt* v. *Van Brunt,* 111 N. Y. 187.) The rights and interests of the parties are *res adjudicata.* (*Leavitt* v. *Wolcott,* 95 N. Y. 212; *Patrick* v. *Shaffer,* 94 N. Y. 430; *Jackson* v. *Van Zandt,* 12 Johns. 176; *Lott* v. *Wyckoff,* 2 N. Y. 357.)

*Austen G. Fox* and *Robert Thorne* for respondents. The testator's intention was to keep his estate together until the death of the survivor of his two youngest children, and to distribute it among his widow, should she then be living, and such of his descendants as should then be living. (*Matter of Baer*, 147 N. Y. 348; *Townsend* v. *Frommer*, 125 N. Y. 468; *Matter of Brown*, 154 N. Y. 314; *Clark* v. *Cammann*, 160 N. Y. 315; *Dougherty* v. *Thompson*, 167 N. Y. 484; *Cascaden's Appeal*, 153 Penn. St. 170; *Smith* v. *Edwards*, 88 N. Y. 92; 3 Jarman on Wills [5th Am. ed.], 640; *Vincent* v. *Newhouse*, 83 N. Y. 505; *Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125.) The right of Genevieve M. Rudd to a share of income ceased upon her death. (*Dougherty* v. *Thompson*, 54 App. Div. 456; *Hoppock* v. *Tucker*, 59 N. Y. 202; *Delafield* v. *Shipman*, 103 N. Y. 463; *Matter of Tompkins*, 154 N. Y. 634; *Matter of Viele*, 35 App. Div. 211; *Cochrane* v. *Schell*, 140 N. Y. 516.) There is nothing, either in the referee's report or in the interlocutory decree in the partition suit or in the judgment in the accounting suit of 1895, which decides that Genevieve M. Rudd had an absolute indefeasible vested fee in remainder even in the land involved in that suit. (1 R. S. 723, § 14; *Campbell* v. *Stokes*, 142 N. Y. 23.) The plea of estoppel by judgment is not sustained by a finding in the referee's report or by the interlocutory decree confirming such finding, and the final decree contains no adjudication on the subject of Genevieve's interest. (Freeman on Judgments [4th ed.], § 251; Bigelow on Estoppel [4th ed.], 56; *Webb* v. *Buckalew*, 82 N. Y. 555; *Revere Co.* v. *Dimock*, 90 N. Y. 33; *Springer* v. *Bien*, 128 N. Y. 99; *Stokes* v. *Stokes*, 155 N. Y. 581; *Russell* v. *Lathrop*, 122 Mass. 300; *S. D. Co.* v. *La Grange*, 3 C. P. Div. 67; *Cummins* v. *Herron*, L. R. [4 Ch. Div.] 787; *Craighead* v. *Wilson*, 18 How. [U. S.] 199; *Hermiston* v. *Stamthorp*, 2 Wall. 106, 112; *Kane* v. *Whittick*, 8 Wend. 219.)

Martin, J. This controversy relates solely to the proper disposition of the portion of the estate of George Rudd,

deceased, to which, under his will, Genevieve M. Rudd would have been entitled if she were still living and survived the trust term created thereby. The determination of this question involves the construction of the third paragraph of the testator's will. He thereby gave all his residuary estate to his executors, in trust, to invest the personal property and to rent the real estate, and then, in effect, provided that during the life of the survivor of his two children Marvin and Allie, his executors should apply one-third of the rents and income to the use of his wife during her life, apply the residue to the use of his five children, Eliza, George, Mary, Marvin and Allie, in equal shares, and if, before the death of the survivor of Marvin and Allie, any child should die leaving issue, then the share of the one so dying was to be paid to such issue, but if no issue survived, then such share was to be paid to the surviving children of the testator. The devise and bequest to the executors was also upon the further trust that upon the death of the survivor of his two children named, the executors should divide the estate and pay one-third to his wife if living, and one share of the residue thereof to each one of his children who should then be living, and to the issue of any who should have died leaving lawful issue, such issue to take the share of its deceased parent. If the wife died before the death of such survivor, then upon the termination of the trust the whole trust estate was to be divided between his children and grandchildren, the latter to take the share of the parent, if one solely, if more jointly and equally.

As the trust term was measured by the lives of his youngest children, it is manifest that the testator intended to suspend the vesting or devolution of the title to his property as long as possible and not offend against the statute. That he intended his wife should have one-third of the income during her life if the trust should so long continue, and if not that she should then receive one-third of the principal of the trust estate, there is no doubt. It is quite as obvious that it was his intention at the termination of the trust that two-thirds of the trust estate, if his wife were living and the whole if she were

dead, should be divided between his children who were living at that time, subject only to the provision as to the previous death of a child leaving lawful issue. Thus the only disputed question is whether in case of the death of one of his children, leaving issue, it was the intent of the testator that such grand-child should take the same interest in his estate that its parent, if living, would have taken. That the testator intended that each of his children should take only a contingent or defeasible estate or interest in the trust property which would not vest until the end of the trust period, or, if vested, would be divested by the death of such child during the continuance of the trust, cannot be successfully denied. But it is claimed that the third paragraph of the will indicates a purpose to confer upon the grandchildren an estate greater and superior to that given to the children. The contention is that there is no express provision in the will limiting the ownership or dis-position of the share of a grandchild to such as should be living at the termination of the trust, and, hence, the title of Genevieve to the share of her father at once vested and upon her death, intestate, it was inherited by the appellant. It is argued that if the testator had intended to limit or restrict the estate of the grandchildren to the same as he gave to his chil-dren, there would have been an express provision to that effect. While this argument is not without some force, still, when we consider the provision that such grandchildren were to take the share of their parents, we think it indicates a plain intention to give his grandchildren only such interest or estate as their parents would have had if living, and that the omis-sion to repeat the words " shall then be living " after the pro-vision as to grandchildren is overcome by that statement when considered in connection with the other provisions of the will which disclose that the obvious scheme and purpose of the testator was that his grandchildren should take only the share or interest of their parents.

It is to be observed that the will contains no words of gift to the children or grandchildren either of the income or of the principal. The income the trustees are directed to apply

to the use of the testator's wife, children or grandchildren, while at the termination of the trust the body of the estate is to be divided among his wife, children and grandchildren if the wife shall be living, if not, between the children and grandchildren. Thus, it is obvious that it was the intent of the testator that both income and principal should be applied and divided among persons living at the time when such application or division was to be made, and that the condition of survivorship which was annexed to the rights of children was intended to be annexed to the rights of grandchildren. Obviously the gift was in future and not present, and, hence, falls within the rule that where the only gift is in the direction to pay or divide at a future time, the case is not to be ranked with those in which the payment or division only is deferred, but is one in which time is the essence of the gift. There are in this will no words or provisions which import a present or vested gift or which indicate such an intent. The rule that where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in a beneficiary will not take place until that time arrives, is a canon of interpretation which is fully established by the decisions of this court. ( *Warner* v. *Durant*, 76 N. Y. 136; *Smith* v. *Edwards*, 88 N. Y. 92, 103; *Delaney* v. *McCormack*, 88 N. Y. 174, 183; *Delafield* v. *Shipman*, 103 N. Y. 463, 467; *Shipman* v. *Rollins*, 98 N. Y. 311; *Matter of Crane*, 164 N. Y. 71.) That there were words of gift to the executors in trust, does not, we think, affect the rule applicable to the beneficiaries among whom the income and body of the estate were to be divided. " Where final division and distribution is to be made among a class the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made. (*Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125; *Goebel* v. *Wolf*, 113 N. Y. 405, 411; *Teed* v. *Morton*, 60 N. Y. 506; *Matter of Smith*, 131 N. Y. 239, 247.) In such cases the gift is contingent upon survivorship, and if it vests at all before the date of distribution it is sub-

ject to be divested by the death before that time of a person presumptively entitled to share in the distribution." (*Matter of Baer*, 147 N. Y. 348, 353.)

Without further discussion or added authorities, in view of the recent decisions by this court which, in principle, are decisive of this case, and in view of the opinion of the learned Appellate Division, it seems unnecessary to further consider the construction of the testator's will, except to add that we fully concur in that respect with the result reached by the courts below.

The appellant, however, contends that the court is prevented from considering the proper construction of this will for the reason that it has been interpreted in two former actions, and that those decisions are *res adjudicata* and bar a re-examination of the question.

The first was an action of partition instituted in 1890 by Thaddeus K. Miller as plaintiff, in which Janet Rudd, Eliza M. Rudd and Mary F. Rudd, individually and as executrices of George Rudd, deceased, and George Rudd, Mary A. T. Rudd, Althea Rudd, Annie E. Rudd and Genevieve M. Rudd were defendants. The premises partitioned consisted of a piece of real estate in the city of New York, the title to which at the time of his death was in George Rudd and others as tenants in common. It was alleged in the complaint that Janet Rudd, Eliza M. Rudd and Mary F. Rudd were entitled to a one-half interest in the premises as executrices and trustees under the will of George Rudd, deceased, and that they with George Rudd, Jr., Althea Rudd and Genevieve M. Rudd were entitled to the income thereof. The judgment prayed for was that the interest of each of the parties should be ascertained and determined, and that a partition or sale should be had. The complaint was subsequently amended so as to add three of the children of George Rudd, Jr., as parties defendant. The infant defendants, including Genevieve, answered by their guardians, submitting their rights to the court. No other answer seems to have been interposed.

The action was referred to a referee to hear and determine.

He reported in favor of a sale of the premises and, among other things, found: That Janet Rudd, Eliza M. Rudd and Mary F. Rudd, as executrices of and trustees under the last will and testament of George Rudd, deceased, were seized and possessed of and entitled to the premises described in the complaint as tenants in common with others, and that their respective shares were as follows : That the defendants Janet, Eliza and Mary, as such executrices and trustees, were entitled to one-half part thereof for the use and purposes of the trust created by the will of George Rudd, deceased ; also, that by the conveyances stated in his report George Rudd and Sarah Kinnier became seized in fee and possessed as tenants in common of the land and premises described in the complaint ; that thereafter, upon the death of George Rudd and by virtue of the provisions of his will, the defendants Janet, Eliza and Mary, as trustees for the uses and purposes of the trust created in and by said will, became seized and possessed as tenants in common with Sarah Kinnier of such land and premises, and upon the death of Sarah Kinnier and by the provisions of her will her son, Thaddeus C. Kinnier, became seized and possessed of said land and premises as tenant in common with said Janet, Eliza and Mary as such trustees ; that the defendant Genevieve M. Rudd was entitled to receive from the said trustees two-fifteenths of the income, rents and profits from said undivided one-half part of the premises described in the complaint and a remainder in fee of a two-fifteenth part of the same, such interest in said income and such remainder being subject to be increased by the death of said Janet Rudd, or the death, without leaving issue, of any one or more of the children of George Rudd, deceased, prior to the death of said survivor Althea Rudd.

These provisions of the report were made a part of the interlocutory judgment. But upon the entry of the final judgment the court did not make or include therein any determination as to the construction of the testator's will or as to the rights under it of the several defendants therein further than to decide and adjudge that the referee making

the sale should pay to the executrices and trustees under the will of George Rudd, deceased, one-half of the proceeds of the sale for the uses and purposes of the trust created thereby.

. In determining the effect of the decision in that action and how far it is *res adjudicata*, it is necessary to ascertain what issues were material and necessarily involved and decided in that case, who were the parties between whom the issue decided arose, their relations to each other, and whether the interlocutory judgment is controlling, or the final judgment is the criterion by which we are to determine what was conclusively decided.

Many of the facts established in this case were not in existence when that decision was made. Genevieve died about seven years after that action was decided, and then for the first time the issue involved in this case arose. The purpose of that action was simply to obtain a sale of the property owned in common with the plaintiff therein, so that it could be divided between the tenants in common according to their interests as they then appeared. Obviously, the decision and judgment in that case related only to that portion of the estate of the decedent which was sought to be partitioned in that action. The issues were, *first*, who were seized of the premises as tenants in common; *second*, whether the premises could be partitioned or whether they were required to be sold; and, *third*, if sold, to whom the proceeds of the sale should be paid. The referee found that the executrices and trustees under the will of the testator were seized, possessed of and entitled to one-half of the premises for the purposes of the trust created in and by his will, and that as such they were entitled to one-half of the proceeds of such sale.

It is true that the referee also stated in his report that Genevieve was entitled to two-fifteenths of the income from the premises sought to be partitioned and a remainder in fee of a two-fifteenths part thereof. But when the pleadings, report and interlocutory judgment are read together, it is obvious that the only issue that was then involved was who were entitled to the proceeds of the sale of the premises in ques-

tion. That issue was decided by the referee, was included in the interlocutory judgment, and was the only issue determined by the final judgment. As the title to the testator's residuary estate which included that property was vested in the trustees and not in the beneficiaries under his will, the only issue involved or that it was necessary to decide was as to the portion of the premises to which the testator's trustees were entitled. Doubtless at that time Genevieve was presumptively entitled to a remainder in two-fifteenths of the testator's estate, but as her title was merely presumptive and could ripen into an actual title only upon the contingency of the death during her life of the survivor of the persons upon whose lives the trust period depended, it is obvious that, in view of her subsequent death, the questions which arise in this case were not and could not have been involved or properly decided in that action. Moreover, in that case there was no issue between the defendants who were beneficiaries under the will of George Rudd, deceased. The only issue was between the plaintiffs in that action, who are strangers to this, and the defendants Rudd and others. A judgment against several defendants cannot determine their rights as between themselves unless they are drawn in issue. (Bigelow on Estoppel, 96.)

The defendants in that action might perhaps have raised and had the question of title as between themselves determined by complying with section 1543 of the Code of Civil Procedure, still, as they did not, the only issue was one between the plaintiffs in that action and the defendants therein. The final judgment in that case determined merely that one-half of the proceeds of the sale should be paid to the executrices of the testator's will for the uses and purposes of the trust therein created. That was the only material question involved in the determination of that action or that it was necessary to decide under the pleadings and issues therein.

As already suggested, it is possible that under the provisions of section 1543 issues might have been framed and tried as to the rights and interests of each particular party. But no such

issues were joined. None of the defendants alleged any interest in the property which was controverted by the other defendants, nor was any such issue tendered, by serving answers upon their co-defendants as required. So that no issue was raised between the various defendants as to the particular interest which each had under the will of George Rudd, and the only question which was really at issue and decided was that included in the final judgment which provided for the payment of one-half of the proceeds to the executrices of the testator's will. As the appellant claims that the judgment in that action was an estoppel in this, the burden of proof was upon her to show clearly that the question in issue in this case was litigated and determined in the former action. (*Zoeller* v. *Riley*, 100 N. Y. 102.) That burden she has not borne. Moreover, she failed to prove that the former judgment was between the same parties or their privies; or that the same question was involved, litigated and actually decided in that action ; or that it was material and necessary to such decision ; or that the former judgment was upon the merits and involved the same facts ; or that if any such facts were determined that such determination was included in and made a part of the final judgment.

The requisites of this kind of an estoppel are: 1. There must be a judgment, as verdicts or other findings not followed by judgment are not binding; 2. The judgment must have been valid; 3. It must have been rendered upon the merits, that is, the same cause of action must have been at issue and decided ; 4. The judgment must have been final, as a preliminary decree or judgment will not ordinarily result in precluding the parties from drawing the matter into issue again ; 5. The judgment must be in force at the time of the alleged *res adjudicata ;* and, 6. It must be certain, as certainty is the essence of such an estoppel. (Bigelow on Estoppel, 48 *et seq.*)

It is settled by the decisions of this court that a judgment is conclusive in a second action only when the same question was at issue in a former suit and the subsequent action was between the same parties or their privies, and that the conclu-

sive character of a judgment extends only to the precise issues which were tried in the former action; they must be identical in each action, not merely in name, but in fact and in substance, and the party seeking to avail himself of a former judgment must show affirmatively that the question involved in the second action was material and actually determined in the former, as a former judgment will not operate as an estoppel as to immaterial or unessential facts, even though put in issue and directly decided. In other words, a former judgment is final only as to the facts which are actually litigated and decided, which relate to the issue therein, and the determination of which was necessary to the determination of that issue. (*Reynolds* v. *Ætna Life Ins. Co.*, 160 N. Y. 635, 651.) A judgment is conclusive upon the parties only in respect to the grounds covered by it and the facts necessary to uphold it, and although a decree, in express terms, professes to affirm a particular fact, yet, if that fact was immaterial to the issue and the controversy did not turn upon it, the decree will not conclude the parties in reference to such fact. (*People ex rel. Reilly* v. *Johnson*, 38 N. Y. 63.) A judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided. It is final only as to such facts as are litigated and decided, which have such a relation to the issue that their determination was necessary to the determination of that issue. (*House* v. *Lockwood*, 137 N. Y. 259, 268; *Stannard* v. *Hubbell*, 123 N. Y. 520.) "In order that a judgment should have the effect claimed, it is not enough that the party produce a record showing a judicial determination of the same question litigated in his favor, but it must also appear that it was rendered upon the merits, upon a material point and substantially upon the same facts presented in the subsequent case." (*Shaw* v. *Broadbent*, 129 N. Y. 114, 123; *Converse* v. *Sickles*, 146 N. Y. 200, 208; *Genet* v. *Del. & Hud. Canal Co.*, 163 N. Y. 173; *Same* v. *Same*, 170 N. Y. 278.) Neither the verdict of a jury nor the findings of a court in a prior action upon the precise point involved in a

subsequent action between the same parties constitute a bar, unless followed by a judgment based thereon, or into which the verdict or findings entered. The judgment is the bar, and not the preliminary determination of the court, and although a judgment has been entered in a prior action, it does not prevent the relitigation of a fact litigated and found in such action, which was wholly irrelevant to the issues therein, and did not enter into and was not involved in the final judgment. (*Springer* v. *Bien*, 128 N. Y. 99; *Lance* v. *Shaughnessy*, 86 Hun, 411; affirmed on opinion below, 153 N. Y. 653; *Stokes* v. *Stokes*, 155 N. Y. 581, 592.) It is only a final judgment upon the merits which is competent as evidence and conclusive in a subsequent action between the same parties or their privies, and an interlocutory order is not such a judgment. (*Webb* v. *Buckelew*, 82 N. Y. 555; *Revere Copper Co.* v. *Dimock*, 90 N. Y. 33, 36.)

As the former judgment was not between the same parties, as the question involved in this case was not at issue or litigated in the former action and was not material or necessary to the determination therein, as that judgment was final only as to such facts as were in issue, litigated and necessary to the determination of that action which did not include the question involved in this, and as neither the findings of the court nor the interlocutory judgment were followed by a final judgment determining that question, it is quite manifest under the authorities to which we have referred that the judgment in that action was not *res adjudicata* upon the question involved in this. We are also of the opinion that the learned Appellate Division was justified in interpreting the term "remainder in fee" as not importing a fee simple absolute or an absolute fee, and in holding that the description of Genevieve's estate or interest, contained in the referee's report and interlocutory judgment as a "remainder in fee," did not effect any change or enlargement of her interest or estate beyond that given by the will.

This leaves for consideration the effect of the second action upon which the appellant relies as being *res adjudicata.*

9

That action was for an accounting brought in 1894 by Janet Rudd as sole surviving executrix of her husband's estate. It was commenced in the Supreme Court, and the only question involved was the proper disposition of the income of the trust estate which had accrued since the last preceding accounting of the trustees. At that time Genevieve was alive, and while the judgment in that action decreed that she was entitled to the share of the accrued income to which her father, if living, would have been entitled, yet it related only to the particular funds which had then accumulated. While that adjudication was final and conclusive between the parties as to the accounting then had, it is no bar to the decision of the question now presented as to the proper disposition of the income of the property at present in the hands of the trustees. This question seems to be settled by the decision in the cases of *Bowditch* v. *Ayrault* (138 N. Y. 222, 231) and *Matter of Hoyt* (160 N. Y. 607, 618). In *Matter of Hoyt* it was held that, while the decrees in the former accountings were binding upon the parties as to the amounts therein involved, they would not affect a subsequent decision or prevent a party from raising or litigating a question as to the latter, although it would result in a different decree from that previously made. In that case it was claimed that as an allowance had been reserved to make good the amount paid from the principal trust fund which had been permitted to pass unchallenged, the former decrees were *res adjudicata* and that the question could not be subsequently raised; but this court held otherwise. It is obvious that, in the former action for an accounting by the trustees of this estate, the only question involved was who were then entitled to the income from the trust fund then in the hands of the trustees, and it was in no way determined how the subsequent income should be disposed of. Since that time material changes have taken place, and the question involved in this action relates to the proper disposition of the fund at this time, and is not controlled by the former adjudication except as to any income that came into the hands of the trustees anterior to Genevieve's death.

Thus, we have reached the conclusion that neither the judgment in the partition action, nor that in the action for an accounting, is a bar to the present suit. Hence it follows that the judgment of the Appellate Division should be affirmed.

The judgment should be affirmed, with costs to the respondents, payable out of the trust estate.

PARKER, Ch. J., GRAY, HAIGHT, VANN, JJ. (and BART-LETT, J., in result), concur; O'BRIEN, J., not voting.

Judgment affirmed.